**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**


UNITED STATES OF AMERICA

v.                                               3:06-cr-116-J-32HTS

JOSE LANDICHO TRINIDAD, JR.

_____

**REPORT AND RECOMMENDATION**[1]

**I.  Status**

    This cause is before the Court on the Motion to Suppress
Statements, Admissions and Confessions (Doc. #20; Motion), filed on
May 1, 2006.  The government filed opposition in response to the
Motion on May 5, 2006.  *See* United States' Response to Defendant's
Motion to Suppress (Doc. #23; Opposition).  An evidentiary hearing
was held before the undersigned on May 8, 2006.  At that hearing,
Officer Sherry Milowicki of the Jacksonville Sheriff's Office was
the sole witness.

**II. Facts**

    On March 28, 2006, Officer Milowicki was dispatched to the
Defendant's residence at 2592 Jessica Lane in connection with an

_____

    [1]    Specific, written objections may be filed in accordance with 28
U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle
District of Florida, within ten (10) days after service of this document.
Failure to file timely objections shall bar the party from a *de novo*
determination by a district judge and from attacking factual findings on appeal.

allegation[2] that a white male was claiming to be from Immigration. The officer, dressed in uniform, arrived in a marked police car a little after 4:00 P.M.  She saw Mr. Trinidad standing on the porch with his arms folded and nothing in his hands.  As Officer Milowicki approached, she noticed another man lying face down on the porch and asked why he was there.  Defendant responded he had told him to get down and wait for the police.  As for the underlying reason, Mr. Trinidad alluded to the man having kicked on his door last year.

After determining the prone individual was not physically injured, Officer Milowicki handcuffed him, saying the precaution was being undertaken for safety reasons.  At some point, she also called for backup and--having looked at the alleged agent's identification and badge, which was on the chair next to him--for an NCIC verification.  Mr. Trinidad claimed he didn't know the handcuffed man and insisted he was an imposter.

Questioning of both men continued, and Officer Milowicki learned a gun had been involved.  At that juncture, the officer removed her weapon from its holster, although she held it downward and did not point it at Defendant.  She asked Defendant about the location of the weapon and thereafter retrieved a .45 caliber handgun from inside the home on a pool table approximately fifteen feet from the front of the house.  Upon taking the firearm, she

---

[2]     The police had been called by Defendant's girlfriend.

placed it in a chair in the front yard while keeping both individuals in sight.   When Officer Sweat arrived shortly thereafter, Officer Milowicki replaced her own firearm in its holster.   Her gun had been out of the holster for about two and one-half or three minutes.

As the investigation progressed, the NCIC check came back confirming the federal agent's status and the handcuffs were removed.   The agent indicated he had intended to obtain clarification about Defendant's prior representations in connection with a petition to allow him to marry his current girlfriend.

Mr. Trinidad was questioned as to whether the agent had been working on a case for him as claimed, and as to why, if Defendant knew his identity, he had drawn a weapon on him.   Mr. Trinidad mentioned the agent had shown his credentials the last time, but not this time. He additionally stated he had not wanted to be arrested, and that the agent had *Mirandized*[3] him during their previous encounter.   When Mr. Trinidad admitted he had not only brandished a firearm but had also discharged it, Officer Milowicki handcuffed him.   About twenty-five minutes had elapsed between the officer's arrival and Defendant being placed in handcuffs.

---

[3]      *Miranda v. Arizona*, 384 U.S. 436 (1966).

Defendant was then formally arrested.  As she placed him in the squad car, Officer Milowicki read him his *Miranda* rights from a card she keeps in her pocket.  Printed on the card is this warning:

> You have the following rights under the United States Constitution.  You have the right to remain silent. Anything you say can be used against you in Court.  You have the right to talk to an attorney before we ask you any questions and to have an attorney present during questioning.  If you cannot afford an attorney, one will be appointed to you at no cost before any questioning begins.  If you decide to answer questions now, you have the right to stop at any time and consult with an attorney.  Do you understand your rights as I have read them to you today?

Defendant answered *yes* and then proceeded to make several spontaneous statements.  These statements were not included in any report.

### III.  Analysis

In the Motion, Defendant asked the Court "to suppress . . . any oral statement . . . in which Mr. Trinidad is alleged to have described the events leading up to his arrest and [i]ndictment." Motion at 1.  It was argued "[t]he statement was illegally obtained" since "not freely and voluntarily given[,] obtained in violation of his privilege against self-incrimination and right to remain silent[,] and . . . obtained in violation of his right to counsel."  *Id.*

At the hearing, defense counsel narrowed his arguments.  He conceded existing law permits the police some freedom of

- 4 -

investigation.   However,   he   contended   that   all   questioning
subsequent   to   the   moment   the   federal   agent   was   released   from
handcuffs   was   custodial.   At that point, he asserted, the general
investigation   was   over   and   Mr.   Trinidad   became   the   exclusive
subject.

"*Miranda* warnings must precede any 'custodial interrogation.'"
*Garcia v. Singletary*, 13 F.3d 1487, 1489 (11th Cir.), *cert. denied*,
513 U.S. 908 (1994), (quoting *Miranda*, 384 U.S. at 444); *accord*
*United States v. Brown*, 441 F.3d 1330, 1347 (11th Cir. 2006).   In
*Miranda*, the Supreme Court held that, prior to interrogating a
criminal suspect in custody, police must inform the individual:

> [H]e has the right to remain silent, that anything he
> says can be used against him in a court of law, that he
> has the right to the presence of an attorney, and that if
> he cannot afford an attorney one will be appointed for
> him prior to any questioning if he so desires.

384 U.S. at 479; *see also Stansbury v. California*, 511 U.S. 318,
322 (1994).   Pursuant to *Miranda*, "unwarned statements may not be
used as evidence in the prosecution's case in chief." *Dickerson v.*
*United States*, 530 U.S. 428, 443-44 (2000).

An individual "is in custody for the purposes of *Miranda* when
there has been a 'formal arrest or restraint on freedom of movement
of the degree associated with a formal arrest.'"   *Brown*, 441 F.3d
at 1347 (quoting *California v. Beheler*, 463 U.S. 1121, 1125
(1983)).   The test is whether, viewed objectively, a reasonable
innocent   person   would,   "under   the   totality   of   the

circumstances . . . feel a restraint on his freedom of movement to such extent that he would not feel free to leave." *Id.* (quotation marks omitted).

Defendant's argument emphasizes his having become the focus of police investigation. Nonetheless, it is "'the compulsive aspect of custodial interrogation'" that underlies the *Miranda* rule, "'not the strength or content of the government's suspicions[.]'" *Stansbury*, 511 U.S. at 323 (quoting *Beckwith v. United States*, 425 U.S. 341, 346-47 (1976)). "The weight and pertinence of any communications regarding the officer's degree of suspicion will depend upon the facts and circumstances of the particular case." *Id.* at 325. "Even a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive[.]" *Id.*

Under the facts in evidence, it appears Mr. Trinidad was not in custody prior to his being handcuffed. The investigation proceeded at his own home. *Cf., e.g., United States v. Rith*, 164 F.3d 1323, 1332 (10th Cir. 1999) (citing *United States v. Erving L.*, 147 F.3d 1240, 1247 (10th Cir. 1998) for proposition "that suspects are less likely to be found to have been in custody for *Miranda* purposes if they were interviewed in their own homes"). The police were on the scene not as a result of their own initiative but due to having received a call from Defendant's girlfriend that a man was impersonating an immigration agent.

Officer Milowicki drew her gun only briefly and did not point it at Defendant.  There is no evidence Mr. Trinidad was threatened in any way, told to remain in one place throughout the encounter, or even patted down.  He was not handcuffed until he admitted to having fired a round during the incident.  Further, the questions do not seem to have been harassing or unduly prolonged, and there is no indication Defendant was told he would not ultimately be free to leave.  *Cf. id.*

While a reasonable innocent person in Mr. Trinidad's position may have perceived the investigation was tending toward focusing upon him as a suspect and he was temporarily not free to leave, he would not yet have concluded his freedom of movement had been restrained to the degree associated with formal arrest.  *See United States v. Newton*, 369 F.3d 659, 672 (2d Cir. 2004) (noting not every encounter during which person not free to leave amounts to custody); *id.* at 675-76 (applying *Berkemer v. McCarty*, 468 U.S. 420, 437 (1984), factor of whether detention would be understood as likely "'temporary and brief'" to investigation conducted at residence); *United States v. Pescatore*, No. 04-CR-774 (TCP), 2006 WL 467948, at *2-3 (E.D.N.Y. Feb. 27, 2006).  The evidence fails to show Defendant made unwarned statements that were other than voluntary and noncustodial.[4]

---

[4]     The Government suggests, as an alternative argument, any portion of the questioning related to determining the location and other aspects of the firearm would be independently justified by the public safety exception to *Miranda*.  *See* Opposition at 8.  Indeed, even though it may be argued "the gun was

Finally, in regard to the spontaneous utterances subsequent to *Miranda* warnings, suppression thereof would be improper even if the warnings were in some way(s) ineffective[5] as the statements were not produced by interrogation. *See, e.g., United States v. Johnson*, 136 F. App'x 279, 283 (11th Cir. 2005) (per curiam).

### IV. RECOMMENDATION

Based on the foregoing, it is recommended the Motion (Doc. #20) be **DENIED.**

**ENTERED** at Jacksonville, Florida, this 10th day of May, 2006.

/s/        Howard T. Snyder
HOWARD T. SNYDER
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Timothy J. Corrigan
United States District Judge

Counsel of Record
     and *pro se* parties, if any

---

in a private residence, and therefore posed no threat to members of the general public[,]" the public safety exception extends to concerns for officer safety. *United States v. Mendoza*, 333 F. Supp. 2d 1155, 1161 (D. Utah 2004).

[5]   However, the warnings given herein fully comport with the requirements of *Miranda*.

-8-